## TUTTLE v. TUTTLE.

The amount the wife should receive as permanent alimony when granted a divorce for her husband's fault rests in the sound discretion of the trial court; yet if the award is erroneous on its face or inequitable to either party, it may be reviewed on appeal.

In determining the amount of permanent alimony to be awarded to a wife on her obtaining a divorce tor the husband's fault, the court should consider the value of his property, his capacity to earn money, the value of her property, the age and health of each, position in society, faults of each as the cause of the separation, the care and custody of children, if any, and if there be no children, and the husband has both real and personal property and the wife has none, she is entitled, in the absence of other controlling circumstances, to at least one-third in value of his entire property.

"Permanent alimony" is that provision which the law makes for the support of a wife, or of her who was a wife, out of the estate of the husband after separation, in lieu of his common-law obligation to support her as his wife if they should have continued living together.

Plaintiff, who was 36 years of age, and defendant 46, after having been married about three years were divorced because of defendant's extreme cruelty. At the time of the decree, defendant's property amount to $16.500, nearly all of which had been accumulated prior to the marriage. Plaintiff had no property except her wearing apparel, worth $75 when married, and not to exceed $50 at the date of the decree. Neither plaintiff nor defendant had any children, and in anticipation of the suit, defendant transferred a portion of his estate, worth $8,000 to his sister. The court allowed plaintiff in all, for temporary alimony and expense money, $630. **Held,** that an award of $2,000 as permanent alimony was an improper exercise of discretion and should be increased to $5,500, payable in yearly installments of $1,000 each, and made a first lien on all of defendant's property.

(Opinion filed December 3, 1910.)

Appeal from Circuit Court, Kingsbury County. Hon. ALVA E. TAYLOR, Judge.

Action by Anna F. Tuttle against Edmund L. Tuttle. From so much of a divorce decree as awarded plaintiff $2,000 only, she appeals. Modified.

See, also 26 S. D. —, 128 N. W. 695.

*A. W. Wilmarth,* for appellant. *Gardner, Fairbank & Churchill* and *W. A. Lynch,* for respondent.

McCOY, J. This action was instituted in the circuit court by the plaintiff and appellant, Anna F. Tuttle, against Edmund L. Tuttle, defendant and respondent, for the purpose of obtaining an absolute divorce from respondent and permanent alimony. The trial of the issues resulted in findings and judgment in favor of appellant and an awarding to her by the trial court of $2,000 permanent alimony. Plaintiff has appealed from that part of the judgment and decree awarding her $2,000 permanent alimony.

There is but one assignment of error urged and but one question for consideration before this court and that is, whether the trial court abused its discretion in awarding plaintiff only $2,000 permanent alimony. This assignment of error is based solely upon the findings of fact made by the trial court. Plaintiff based her cause of action on the ground of cruel and inhuman treatment. Defendant, in the counterclaim contained in his answer, also made cross-complaint charging plaintiff with infidelity and fraud in contracting the said marriage.

The court made the following findings of fact: That plaintiff and defendant were married at Crown Point, Ind., January 12, 1907, and ever since have been and now are husband and wife; that plaintiff is 36 years of age and defendant 46 years of age, both in good health, and neither plaintiff nor defendant have any children; that both the plaintiff and defendant are now and have been residents of Kingsbury county for more than two years last past; that plaintiff and defendant were raised from childhood in the city of Waukegan, Ill., and attended the same school in said city and have been personally acquainted since their childhood days; that since the marriage of the plaintiff and defendant, the defendant for more than two years has treated the plaintiff with extreme cruelty and has inflicted grievous mental suffering upon

her, and called her vile and opprobrious names and has charged
her with infidelity to her marriage vow and with unchastity prior
to her marriage with him, and has refused to call with her socially
upon any of their neighbors and has refused to go with her or
permit her to accompany him to any place of amusement or to any
social gatherings; that the value of the defendant's property at
this time is the sum of $16,500, nearly all of which was accumu-
lated by him prior to the marriage of the plaintiff and defendant,
as herein set out, nearly all of which is personaly property; that
the plaintiff had no property except her wearing apparel, of about
$75 in value at the time of the marriage between plaintiff and
defendant, and at the present time has no property except her
wearing apparel, not to exceed the value of $50.

The court made the following conclusions of law:    That the
plaintiff is entitled to a decree of this court severing the bonds of
matrimony heretofore existing between the plaintiff and defend-
ant: that the defendant pay to the plaintiff from the proceeds of
his property alimony in the sum of $2,000, payable as follows, to-
wit, $400 at this time; $400 on the 1st of January, 1911; $400
on the 1st of January, 1912; $400 on the 1st of January, 1913;
and $400 on the 1st of January, 1914; provided, that if the plain-
tiff remarry, defendant shall not be required to pay any of the
payments herein stated falling due after the said marriage; that
the defendant should be required to give a good and sufficient
bond in the sum of $3,000, to be approved by the court to insure
the compliance with said order, and on failure of the defendant
to give a bond which the court will approve the whole sum of
$2,000 shall be due and payable at once.

The contention of appellant is that, under the said findings of
fact, she should have been awarded permanent alimony far in
excess of $2,000.    In this contention we are of the opinion that
appellant is in the right.    While there is no arbitrary, fixed rule
defining and limiting just what proportion of the husband's prop-
erty the wife should receive as permanent alimony where she has
been granted a divorce for his fault, and while the matter of the
amount of such alimony rests in the sound discretion of the trial

court, still, if the award is erroneous on its face or unjust and inequitable to either party, it is the subject of review and correction on appeal. Williams v. Williams, 6 S. D. 284, 61 N. W. 38; 14 Cyc. 769. When in equity and justice the amount awarded is too great, the appellate court will reduce such amount. Williams v. Williams, supra. Fahey v. Fahey, 43 Colo. 354, 96 Pac. 251, 18 L. R. A. (N. S.) 1154, 127 Am. St. Rep. 118. When the amount awarded by the trial court is inadequate, under the circumstances shown, the appellate court will increase the amount thereof. Muir v. Muir, 133 Ky. 125, 92 S. W. 314, 4 L. R. A. (N. S.) 909; Hoff v. Hoff, 48 Mich. 281, 12 N. W. 160; Schabel v. Schabel, 115 Mich. 487, 73 N. W. 553; Walston v. Walston, 126 N. W. 145; 7 Decennial Digest, Title, Divorce, § 240.

In arriving at what is a just and equitable amount of permanent alimony that should be allowed the wife, on separation by divorce for the fault of the husband, various matters should be taken into consideration. The value of his property both real and personal, and his capacity to earn money, the value of her property, the age and health of each, the position of each in society, the faults of each as to the cause of the separation, the care and custody of the children, and all such kindred questions may and should be considered. Where there are no children, and where the husband has property both real and personal, and the wife has none, and where there are no other controlling influences or considerations, she is entitled as a matter of course to at least one-third the value of his entire property. 2 Bishop, Mar. & Divorce, § 464. Permanent alimony is that provision which the law makes for the support of the wife, or of her who was the wife, out of the estate of the husband after separation, in lieu of his common-law obligation to support her as his wife, if they should have continued living together. She was entitled to and had his support out of all he possessed, including earnings. When he has broken up that relation, so that she can no longer partake jointly with him of such support, the law sets apart to her enough of his estate, including earnings, to make an equivalent of what she is denied by his fault. Less than that would be to put a premium

upon the husband's abandonment of his wife. Muir v. Muir, supra. How much in judicial reason should she be allowed? "If, to determine what proportion of the joint income the wife should have for her alimony, we look into what the law has established for other things, we shall conclude that the causes must be rare in which it ought to be less than one-third. The rule for dower and for the distribution of the effects of a deceased husband recognizes the right of the wife to use one-third or more of the common estate. And surely in natural justice, a wife dwelling apart from her husband should be permitted to spend one-half as much for her living as he for his. Nor would this be giving her anything because of the fact that she is the injured party. But, if money can help in binding up the wounds which he inflicted, his money should be called into this service. And, if the guilt of the parties were equal, she should, in still another view, have what would make her pecuniary situation as comfortable as his, namely, since marriage united the two in equal fortunes, they should be equal as well in non-cohabitation as in cohabitation. Thus we have the smallest proportion indicated by reason, liable to be increased more or less by the particular facts of the case." 2 Bishop, Mar. & Div., § 467.

Taking these authorities as a criterion and applying them to the facts and circumstances of this case, as shown by the findings, the least equitable and just amount that should have been awarded to plaintiff, as permanent alimony, was one-third the value of defendant's property. There are no facts and circumstances found showing any reason why the same should be less. Here it appears that defendant owned all the property and plaintiff practically none. Marriage had united the two in equal fortunes so far as the means of support was concerned. The finding of the court is that defendant for more than two years treated plaintiff with extreme cruelty, and inflicted upon her grievous mental suffering, and called her vile names, and charged her with infidelity. There is no finding that she was at fault in the least. By the marriage relation he was legally obligated to furnish her support, according to his means and station, the remainder of her life, had such mar-

riage relation continued. By his fault she is cast upon the world alone. It is a matter of common knowledge that the opportunity and chance for a divorced woman of plaintiff's age to again be advantageously married is not good. If plaintiff's permanent alimony, on separation by divorce for defendant's fault, is to be given in lieu of his obligation to support her, it certainly and logically follows that the amount of such permanent alimony should be in some similar proportion to the reasonable value of such obligation to support; otherwise there would be a premium placed upon defendant's cruel and inhuman treatment of plaintiff. Therefore we conclude that under the findings in this case the total sum of $2,000 permanent alimony is wholly inadequate and out of all just proportion to the reasonable value of defendant's obligation to support her, as his wife, and as he should have supported her, according to the means he possessed, had such marriage relation continued.

It appears that temporary alimony and expense money has been allowed plaintiff from defendant's property, in all about $630, and it also appears that defendant prior to the beginning of this action, and in anticipation thereof, had transferred to his sister a portion of his estate valued at $8,000, and, taking these things all into consideration, we are clearly of the view that defendant should pay to plaintiff $5,500 as permanent alimony.

That part of the judgment of the circuit court relating to the amount and payment of permanent alimony is therefore modified to read as follows: That defendant pay to plaintiff permanent alimony in the sum of $5,500, to be paid as follows: $1,500 on or before January 1, 1911; $1,000 on or before January 1, 1912; $1,000 on or before January 1, 1913; and $1,000 on or before January 1, 1914; $1,000 on or before January 1, 1915, each of said last four payments to draw interest at the rate of 6 per cent per annum from January 1, 1911, until paid; and that defendant be required to give and furnish a good and sufficient bond in the sum of $8,000, to be approved by the said circuit court, and conditioned that defendant will pay said amounts on the said dates specified; and that in case defendant should

fail to pay said first payment of $1,500 on or before January 1, 1911, or should fail to furnish said bond on or before January 1, 1911, that then, and in that event, the whole amount of said $5,500 permanent alimony shall become due and payable at once, and the same shall thereupon become a first lien upon all the property of defendant, and which property may be sold under this judgment to satisfy said lien; and all other parts and portions of said judgment in the circuit court shall remain as now entered, and the said circuit court is directed to enter final judgment in this cause in accordance with this decision.